**Sandra Sue MORITZ, Appellant–Respondent,**

v.

**Lawrence Jeffrey MORITZ, Respondent–Appellant.**

**Nos. WD 45508, WD 45525.**

Missouri Court of Appeals, Western District.

Dec. 22, 1992.

Regina Keelan Bass, Thayer, Bernstein, Bass & Monaco, P.C., Kansas City, for appellant-respondent.

David R. Rootes, Law Offices of John P. Ryan, Jr., Grandview, for respondent-appellant.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

ULRICH, Presiding Judge.

Sandra Sue Moritz appeals, and her former husband, Lawrence Jeffrey Moritz, cross-appeals from portions of the decree dissolving their unique twenty-two year marital relationship. The points on appeal concern the division of marital property, maintenance, and award of attorney fees. The judgment is affirmed in part as amended, reversed in part and remanded with directions to permit additional evidence and to make certain determinations regarding Mr. Moritz's federal pension and maintenance to Ms. Moritz consistent with this opinion.

Mr. Moritz raises a single point on appeal. He contends the trial court erred

(IA) in determining the residence titled in Ms. Moritz's name was her non-marital property.[1] Ms. Moritz raises three points on appeal. Ms. Moritz contends that the trial court erred (IB) in finding that Mr. Moritz's naval pension was a non-marital asset and/or that it could not be divided as property and in awarding the entire pension to Mr. Moritz, (II) in not awarding her any maintenance, and (III) in failing to award her any attorney fees.

Mr. and Ms. Moritz were married on March 7, 1969, and separated October 9, 1985. Ms. Moritz filed her petition for dissolution on April 6, 1989. In her petition, Ms. Moritz requested maintenance, attorney fees, and an equitable distribution of the marital property. In his answer and cross-petition, Mr. Moritz denied that petitioner lacked sufficient property and earning capacity to provide for her maintenance or attorney fees and asked for an equitable distribution of the marital property. A hearing was held in the matter on August 14, 1991.

The evidence adduced at trial showed that Mr. Moritz was in the Navy during the majority of the marriage (for twenty-eight years from 1960–1988) and that the Moritzes had very limited contact with each other throughout the course of the marriage. Ms. Moritz resided in Missouri during the entire tenure of the marriage, and Mr. Moritz returned to Missouri from his naval duties only sporadically. Although two children were born during the marriage, Ms. Moritz admitted that Mr. Moritz was not their biological father and did not request child support for them.

From the time the Moritzes married until 1979, Ms. Moritz and her children lived with Ms. Moritz's grandparents. Ms. Moritz stated at trial that in August of 1979, her grandparents furnished $25,000 for the down payment for a house. Ms. Moritz used the money to purchase the house in which she and one of her children lived at the time of the trial. The house was titled in her name only. Mortgage payments were made on the house until April 1984, when Ms. Moritz paid the balance on the mortgage with $24,000 to $25,000 she received as a gift from the father of her children.

At the time of the trial, Mr. Moritz, who was fifty years old, testified he was retired from the Navy and received a gross monthly naval pension payment of $2,090, $1,388 per month of which was disposable pay. Mr. Moritz stated that he had worked occasionally as a bartender since his retirement, but he claimed he received no payment for this work.

Ms. Moritz did not work at any time during the marriage. At the time of trial, Ms. Moritz was totally disabled by multiple sclerosis and suffered numerous health problems. Her only income at that time was from Aid to Families with Dependent Children and food stamps.

The trial court entered the decree of dissolution on August 16, 1991. The trial court found that neither party was entitled to maintenance, that the house was Ms. Moritz's separate property, and that Mr. Moritz's naval pension was marital property. The trial court decreed that neither party be awarded maintenance, that Ms. Moritz receive the house in its entirety, that Mr. Moritz receive his naval pension in its entirety, and that Mr. and Ms. Moritz be responsible for their own attorney fees.

## I. Division of Marital Property

### A. House

Mr. Moritz alleges in his cross-appeal that the trial court erred in determining that the parties' marital residence was the nonmarital property of Ms. Moritz. Mr. Moritz contends that the trial court mistakenly applied the "inception of title" theory, which has been judicially overruled, instead of the proper "source of funds" rule.

█ The scope of review of the trial court's actions regarding this point and the other points presented on appeal in this court-tried civil case is defined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The decree of the trial court will be sustained unless there is no substantial evi-

---

1. The points on appeal are addressed in a differ- ent order than that presented by the parties.

dence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.*

■ Section 452.330, RSMo Supp.1991, governs the disposition of property upon dissolution of marriage. Section 452.330.1 directs the court to set apart to each spouse his or her nonmarital property and to divide the marital property "in such proportions as the court deems just" after considering five factors. All property acquired by either spouse after the marriage and before a decree of legal separation or dissolution of marriage is presumed under the statute to be marital property and thus subject to a just division, regardless of whether title to the property is held individually or by the spouses jointly. § 452.-330.3. This presumption can be overcome by a showing that the property was acquired by a method listed in subsection 2 of the statute, which defines marital property as all property acquired by either spouse subsequent to the marriage *except:*

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

§ 452.330.2.

■ Prior to 1984, Missouri courts applied the "inception of title" doctrine to determine when property is "acquired" for purposes of classifying it as marital or nonmarital. *Hill v. Hill,* 747 S.W.2d 718, 719 (Mo.App.1988). Under the "inception of title" approach, property is classified as entirely separate or entirely marital at the moment title is taken. *Id.* In *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825 (Mo.

banc 1984), the Missouri Supreme Court discarded the "inception of title" doctrine and adopted the "source of funds" rule. Under the "source of funds" rule, property is considered to be acquired not when title passes, but *as it is paid for, Id.* at 824; *Hill,* 747 S.W.2d at 719, and "[i]ncremental property values are allocated proportionately to either marital or separate estates according to the source of funds used to purchase the property." *Hill,* 747 S.W.2d at 719. In order to determine the marital interest in debt-free property that has been acquired by the investment of both marital and nonmarital funds, the proper formula to use is:

$$\frac{\text{marital contribution}}{\text{total contribution}} \times \text{value}$$

*Neal v. Neal,* 776 S.W.2d 861, 867 (Mo.App. 1989). Marital contribution is the marital contribution toward the purchase or improvement of the property in question; total contribution is the sum of both marital and nonmarital contributions; and value is the total value of the property at the time of its distribution. *Id.*

■ Ms. Moritz testified at trial that her grandfather gave her $25,000 to use as a down payment for a house and that she in fact used the money to purchase the house in question in August of 1979. She stated that the house was titled in her name only and that she did not inform Mr. Moritz until several months later that she had purchased a house because "I was buying the house with my grandfather's help. It wasn't anything to do with [Mr. Moritz]." She testified that house payments of $304 per month were made on the house until April of 1984, when she used $24,000 to $25,000 given to her by the biological father of the two children born during the marriage. When asked the source of the money used to pay the mortgage payments from August 1979 to April 1984, Ms. Moritz claimed that she did not make the payments with any money Mr. Moritz sent her, but admitted that other than contributions of clothing and other things for the children made by the children's biological father, her only source of income was allotment checks sent by the Navy because of

Mr. Moritz's employment in the Navy. When the trial court confronted her directly, Ms. Moritz conceded, "[W]ell, he [Mr. Moritz] didn't pay all of it."

Mr. Moritz claimed at trial that his name was not on the title because he was on a naval cruise and his "credit wasn't any good" at the time Ms. Moritz purchased the house. He asserted that Ms. Moritz never told him she received money from either her grandfather or the biological father of her children.

When asked at the close of the trial in this case whether the trial court was going to divide the house, the trial court responded "well, the record of title is now in her name," but noted

> his money was used under the evidence here and you might get this record, if a subsequent lawsuit is filed, and you've got a real nicety there because it looks like that he has paid into that thing $17,-000—let's see, I had it figured out here, $17,024 is the payments.

The trial court went on to conclude "dividing that baby, it's kind of like Solomon, you're going to have to cut it in two some way, but that's an equity matter that I don't think we have jurisdiction in this proceeding to decide." In the dissolution judgment entry, the trial court found that the house was the nonmarital property of Ms. Moritz and awarded the house to her in its entirety.

■ The trial court erred in not applying the "source of funds" rule and consequently in not finding a portion of the house to be marital property after recognizing that marital funds (Mr. Moritz's salary from the Navy) totaling at least $17,024 were used to make mortgage payments on the house from August 1979 to April 1984. This Court could reverse the trial court's decision and remand for a determination of the nonmarital and marital contributions to the acquisition of the house. However, in the interest of ending the instant litigation and sparing the parties further cost, this Court can make the judgment the trial court ought to have made. Rule 84.14. The record and evidence permit this Court to make that decision with confidence in the

reasonableness, fairness, and accuracy of the decision. *Grunden v. Nelson,* 793 S.W.2d 569, 576 (Mo.App.1990).

Two items necessary for determining the marital interest in the house using the *Neal* formula are readily apparent from the record. The trial court found in the dissolution judgment entry that the value of the house at the time of its disposition was $52,000. The trial court determined at the close of trial that $17,024 from Mr. Moritz's salary was paid as mortgage payments to acquire the house. Thus, the marital contribution totaled $17,024. *See* § 452.330.2.

Mr. Moritz argues that the nonmarital contribution is the single factor not apparent from the record. Several times during the trial the trial court indicated that the $17,024 paid to Ms. Moritz between August 1979 and April 1984 as a result of Mr. Moritz's membership in the Navy was the only marital contribution. However, during one point of the cross examination of Mr. Moritz the nonmarital down payment could arguably be disputed:

MS. MORITZ'S ATTORNEY: Were you and your—did you and your wife, did you manage to save $25,000 to put as a down payment on this house in 1979?

MR. MORITZ'S ATTORNEY: I object, Your Honor. There is nothing, there has been no dispute about that.

THE COURT: Aw, I'll overrule that but it has no relevancy.

MS. MORITZ'S ATTORNEY: I think it's extremely relevant. He is saying that he paid on that house and that he paid the mortgage on it. He's got a—I mean, I have a right—

THE COURT: Well, the evidence of your own client was that she used, I think I asked her the question or somebody else did, that she used her allotment, part of the money, to pay the payments on the house up until she got money from her family, her grandfather, I believe it was, to pay off the entire mortgage. Wasn't that what it was?

MS. MORITZ: No, sir.

MR. MORITZ'S ATTORNEY: She also testified that she didn't have any other source of income.

THE COURT: I don't think there's any evidence in the record that he paid any of it. I haven't heard it anyway.

MS. MORITZ'S ATTORNEY: That he paid any of what?

THE COURT: Huh? I said directly or indirectly he paid it, and she said yes to the allotment she received from her husband's Navy pay.

■ Contrary to Mr. Moritz's contention, the trial court does not indicate that Mr. Moritz's salary was used to make the down payment. This passage reflects the trial court's momentary confusion about the sequence of events surrounding the purchase of the house. At no time did Ms. Moritz testify during the trial that Mr. Moritz's salary was used to make payments on the house until she received money from her grandfather to pay the balance of the mortgage. Rather, Ms. Moritz consistently stated that her grandfather died in 1978, and approximately one year after his death she used $25,000 she had received from him as a down payment on the house. Ms. Moritz testified that the biological father of her children was the source of the $24,000–$25,000 used to pay off the mortgage in 1984. The portion of the mortgage that was admittedly paid at least partially with marital funds was that paid between August 1979 and April 1984. The trial court stated that the entire $17,024 paid between the down payment and payoff came from Mr. Moritz's salary, and it is evident from the trial court's statements at the close of the hearing that he believed these were the only marital funds contributed to the purchase of the house, as he noted, "it looks like that [Mr. Moritz] has paid into that thing ... $17,024 is the payments" and mentioned the possibility of a subsequent lawsuit to recover those funds.

A subsequent lawsuit is not necessary because this court, as well as the trial court, has authority to determine and allocate the marital interest in the home. Rule 84.14. Applying the *Neal* formula to the contribution amounts in this case ($25,000 down payment plus $24,000 mortgage pay off as the nonmarital contribution) produces the following equation:

$$\frac{\$17,024 \text{ (marital contribution)}}{\$66,024 \text{ (total contribution)}} \times \$52,000 \text{ (value)}$$

*Neal*, 776 S.W.2d at 867. The total marital interest in the home is $13,408.

Section 452.330.1, RSMo Supp.1991, directs the courts in proceedings for dissolution of marriage to divide marital property as the court deems just after considering all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1.

The evidence established that Ms. Moritz acquired the house and has lived in it since its acquisition. Although Mr. Moritz visited Ms. Moritz in the house periodically during the marriage, he never lived in the house. Ms. Moritz is not employed and, because of her numerous physical ailments, including multiple sclerosis, is unemployable. Both parties are guilty of marital misconduct during the course of the marriage, which was accepted by both spouses. This Court allocates the marital interest in the house to Ms. Moritz.

### B. Pension

Ms. Moritz contends in her appeal that the trial court erred in finding that Mr. Moritz's naval pension was a nonmarital asset and/or that it could not be divided as property and in awarding the entire pension to Mr. Moritz. Ms. Moritz argues (a)

military pensions are marital property in Missouri and can be divided; (b) the award of the entire pension, even if the court intended that the asset be considered marital property, results in an unjust and unfair division of property, which the trial court based solely on Ms. Moritz's misconduct without consideration of the economic circumstances of the wife; and (c) the trial judge evinced prejudice and gender bias against Ms. Moritz and her attorney which adversely affected the division of the property and requires a reversal.

 Pension benefits resulting from contributions made to a pension fund during marriage are marital property. *Kuchta v. Kuchta*, 636 S.W.2d 663, 665, 666 (Mo. banc 1982); *Hall v. Hall*, 804 S.W.2d 411, 414 (Mo.App.1991). Military nondisability retirement pension benefits received, for service which occurred during marriage, are also considered marital property, *In re Marriage of Cox*, 724 S.W.2d 279, 280–81 (Mo.App.1987); *Coates v. Coates*, 650 S.W.2d 307, 309–12 (Mo.App.1983), with some limitations placed on their division by federal statute. *See* 10 U.S.C.A. § 1408 (1983 & Supp.1992).

 During the trial, evidence was introduced showing that Mr. Moritz was receiving a gross monthly naval pension payment of $2,090 per month, $1,388 per month of which was disposable pay. At the close of the trial in this case, the trial court adjourned without making a pronouncement concerning Mr. Moritz's pension. When counsel for both parties asked about the division of property, the trial court stated, "That's a separate action I was talking about. That's an equity matter." When asked specifically about the pension, the trial court responded, "It's his pension. She gets no part of it. I allowed no maintenance, period." In the decree of dissolution, the trial court found that Mr. Moritz's pension was marital property but awarded the entire pension to Mr. Moritz.

Except for the marital interest in the house, the naval pension was the principal marital asset of the unique marriage. The only other additional assets which the trial court found to be marital property and awarded to Ms. Moritz were household goods of a minimal value.

Applying the applicable factors to be considered when dividing marital property as mandated by section 452.330.1, the trial court's award of the entire pension to Mr. Moritz is not supported by the evidence. The first factor requires consideration of "the economic circumstances of the parties at the time the division of the property is to become effective." § 452.330.1(1). The second factor requires the court to consider "the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse homemaker." § 452.330.1(2). At the time of the divorce, Ms. Moritz had not worked outside the home for over twenty years, was totally disabled from multiple sclerosis, and suffered numerous health problems. Her only income was from AFDC and food stamps. Mr. Moritz was fifty years old at the time of the trial and other than a "calcium buildup" on his back and a slight hearing loss suffered no major physical problems. Since retiring, Mr. Moritz stated he occasionally worked as a bartender for friends of his but claimed he received no compensation for his work other than free drinks. Both parties contributed to the "acquisition" of the pension—Mr. Moritz by serving in the Navy, and Ms. Moritz by maintaining a home for Mr. Moritz during the marriage, although apparently by mutual agreement, Mr. Moritz seldom availed himself of the home.

The third and fourth factors[2], sections 452.330.1(3) & (4), do not support the trial court's award either. The trial court did award the house to Ms. Moritz as nonmarital property.[3] Although there is nothing in the record to indicate the value of the pen-

---

**2.** The fifth factor listed in section 452.330.1 is irrelevant in this case.

**3.** Allocation of the marital and the nonmarital interest in the house acquired during the marriage to Ms. Moritz does not negate her marital

property interest in Mr. Moritz's Navy pension. Ms. Moritz also received two unencumbered vehicles with a combined value of $400 as nonmarital property.

sion, Mr. Moritz states in his brief on appeal that if the house is classified as marital property, the division of marital property would be approximately one-third to Ms. Moritz and two-thirds to Mr. Moritz.

There is evidence of marital misconduct by both parties. Ms. Moritz did admittedly carry on an eleven-year affair during her marriage to Mr. Moritz which produced two children. However, little about the Moritzes' marriage was conventional. Mr. Moritz was in the Navy for most of the marriage and, when he was not at sea, he spent the majority of his time at naval bases outside Missouri. He returned to Missouri only sporadically, in some years less than thirty days a year, until 1985, when he stopped coming home at all. Mr. Moritz acquiesced in the separate lives Ms. Moritz and he led. He represented to the Navy and the world that the children born during the marriage were his own. This representation seems, from the record, to have been to his advantage as well as Ms. Moritz's. There is evidence Mr. Moritz received more money from the Navy and income tax deductions from the Internal Revenue Service by claiming the children were his. The first time Mr. Moritz denied paternity of the children was when divorce proceedings were commenced.

Consideration of the factors listed in section 452.330.1 does not support the trial court's division of the pension. However, because the record does not contain the total present value of the pension (so that this court can compare the property awarded to each spouse), the exact portion of the pension that accrued during the marriage,[4] or even a verified monthly amount of the pension, the record and evidence in this case do not permit this court to make with confidence in the reasonableness, fairness,

and accuracy the decision the trial court should have made. *Grunden,* 793 S.W.2d at 576. Accordingly, this case is remanded to the trial court with directions that the trial court determine and allocate the marital portion of the pension.[5]

### II. Maintenance

Ms. Moritz claims the trial court erred and abused its discretion by failing to award her any maintenance. Ms. Moritz contends the weight of the evidence showed that she was in need of maintenance and that Mr. Moritz had the ability to provide maintenance to her. She also argues that the trial court based its denial of maintenance solely on her misconduct without adequate consideration of all the statutory factors and that the trial judge evinced prejudice and gender bias against her and her attorney which contributed to the denial of maintenance and requires remand.

Section 452.335, RSMo Supp.1991, governs spousal maintenance orders. Section 452.335.1 provides that a court may grant maintenance to a spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for his or her reasonable needs; and (2) is unable to support him or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. § 452.335.1. If a court finds after looking at these two indicators that a spouse needs maintenance, section 452.335.2 directs the court to consider ten enumerated factors in determin-

---

4. Mr. Moritz stated that he left the Navy in 1972 and subsequently reenlisted, but nothing in the record indicates the exact time period he was out of the Navy and what effect that had on his pension.

5. Although the trial court found that Mr. Moritz received a gross monthly naval pension payment of $2,100, $1,388 of which was disposable pay, this information was acquired through Mr. Moritz's testimony only. Evidence at trial revealed that Mr. Moritz had refused to comply

with Ms. Moritz's request for production of naval documents verifying the amount of his pension payments (Mr. Moritz apparently signed an authorization for the release of this information but stated on the authorization form that he would not authorize the release of any information by the Navy). On remand, the trial court may need to require Mr. Moritz to produce this information in order to determine the actual amount of the pension.

ing the amount and duration of the maintenance awarded.

■ In the decree of dissolution, the trial court found that "neither party is entitled to maintenance" and ordered that no maintenance be awarded to either Ms. Moritz or Mr. Moritz. By this statement, the trial court found that Ms. Moritz was not in need of maintenance. Rule 73.01(a)(2); *Long v. Zirkle*, 811 S.W.2d 840, 844 (Mo. App.1991). However, such finding is against the weight of the evidence. Ms. Moritz was already unable to provide for her needs at the time of the trial, as her only income at that time was AFDC payments and food stamps. Although Ms. Moritz was awarded the house, this property was not income-producing. The only marital property allocated to Ms. Moritz at trial were various household goods of a minimum value. Furthermore, the weight of the evidence showed that Ms. Moritz was unable to support herself through appropriate employment, as she had not worked outside the home for over twenty years, was totally disabled from multiple sclerosis, and had suffered numerous health problems.

Ms. Moritz is in need of maintenance. The decision the trial court should have made, however, cannot be determined since the division of the pension and the award of the marital property portion of the house to Ms. Moritz will affect the amount of maintenance awarded. *See* § 452.335.-2(1), (5), and (8). The trial court will determine the appropriate amount of maintenance and award that amount to Ms. Moritz.

### III. Attorney Fees

Ms. Moritz contends as her last point on appeal that the trial court erred and abused its discretion in failing to award her any attorney's fees. She argues that the weight of the evidence showed she does not have the financial ability to pay her attorney's fees, while Mr. Moritz was in a superior financial condition and had the ability to pay the attorney's fees. She also alleges that the trial court erred in refusing to allow her attorney to present any evidence

to establish the amount of attorney's fees or the reasonableness of the fees.

■ Section 452.355, RSMo Supp. 1991, states that courts "from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount ... to the other party" for attorney fees in a dissolution proceeding. § 452.355.1. The award of attorney fees in a dissolution proceeding is within the sound discretion of the trial court, *Whitworth v. Whitworth*, 806 S.W.2d 145, 150 (Mo.App. 1991), and will not be overturned on appeal absent a manifest abuse of discretion. *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App.1992). To demonstrate an abuse of discretion, the complaining party has the burden of showing the award to be "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

■ The trial court ordered in the decree that each party is responsible for his/her own attorney's fees. The financial circumstances of each party, especially after the changes in property division ordered herein, are not so disparate to warrant a finding of abuse of discretion.

Ms. Moritz's claim that the trial court refused to allow her attorney to present any evidence to establish the amount or reasonableness of her attorney's fees is not supported by the record. Ms. Moritz's attorney did question Ms. Moritz about the amount she had paid for attorney fees up to the trial, funds available to her to pay attorney fees, and how much she had agreed to pay her attorney per hour. The trial court waived Ms. Moritz's counsel taking the stand to testify about the fees:

THE COURT: Do you have any further witnesses?

MS. MORITZ'S ATTORNEY: Other than testimony with regard to my attorneys fees, I don't—....

THE COURT: Oh, I think I know what they're worth, ... I know what the fees are around here, all the way from $4.25

an hour, which is the minimum wage, up to as much as they can get. But, I don't think it's an issue that you require witnesses on. As I understand, petitioner rests their case, is that right? Did I understand you rested your case?

MS. MORITZ'S ATTORNEY: Apart from testimony on the attorney's fees, we rest.

THE COURT: Well, I'll waive that part of it.

However, the record is devoid of testimony supporting Ms. Moritz's contention that the trial court denied Ms. Moritz the right to put evidence concerning her attorney fees in the record. Point III is denied.

The judgment is affirmed in part as amended, reversed in part and remanded with directions to permit additional evidence and to make certain determinations regarding Mr. Moritz's federal pension and maintenance to Ms. Moritz consistent with this opinion.

All concur.