C–4 CORPORATION, et al., Defendants–Appellants,

v.

E.G. SMITH CONSTRUCTION PRODUCTS, Plaintiff–Respondent.

No. 66315.

Missouri Court of Appeals, Eastern District, Division One.

March 7, 1995.

Brian E. McGovern, Tracy M. Synan, Chesterfield, for appellants.

Alan G. Gerson, Clayton, Michael B. Katz, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellants, C–4 Corporation, et al., appeal from a ruling of the Circuit Court of the County of St. Louis sustaining respondent's, E.G. Smith Construction Products' ("E.G. Smith"), motion for partial summary judgment. We affirm.

John W. Hardie and Edward Throop were general partners in H.T. Enterprises Partnership IV ("H.T."). On July 26, 1989, Hardie and Throop executed an Agreement relative to H.T. which, at minimum, modified the partnership relationship, and at maximum, dissolved the partnership.

On September 5th, 1989, Mr. Throop executed a promissory note in favor of E.G. Smith as consideration for a settlement agreement, also executed the same day. These documents addressed liabilities owed by H.T. to E.G. Smith arising out of a construction project. Under the promissory note, H.T. was required to pay E.G. Smith $110,000.00 plus interest, commencing on November 1, 1989, with payments continuing for the following twelve months. Throop signed as the general partner of H.T. Hardie did not sign, and no signature block was provided for his signature.

On June 1, 1992, E.G. Smith filed a petition seeking to collect the unpaid balance under the promissory note, totalling $31,-986.92, plus interest. John Hardie and Ed Throop were both named as defendants by virtue of their alleged positions as general partners of H.T. E.G. Smith filed a motion for partial summary judgment on Count II of its petition, with accompanying affidavit, against John Hardie on March 5, 1993. Hardie filed his response and accompanying affidavit on May 18, 1993. The cause was called, heard and submitted on that same date. On November 15, 1993, the trial court entered its order granting E.G. Smith's motion for partial summary judgment against Hardie. On May 11, 1994, E.G. Smith dismissed Count I of its petition without prejudice. This appeal ensued.

Mr. Hardie raises two points in his appeal. First, he contends the circuit court erred in holding him liable under the promissory note because, pursuant to the Agreement he and Throop entered on July 26, 1989, Hardie was no longer a partner in H.T. when the partnership incurred its liability under the September 5, 1989, promissory note. For his second point, Mr. Hardie asserts he could not be held liable on the promissory note executed by Mr. Throop because Throop had no authority to bind Hardie.

■ In reviewing a matter wherein summary judgment has been granted, we view the record in the light most favorable to the non-moving party, giving the nonmovant the benefit of all reasonable inferences, and taking all uncontradicted facts as true. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 382 (Mo.banc 1993). Our review is essentially de novo; because the propriety of summary judgment is purely an issue of law, we are not required to defer to the trial court's order granting summary judgment. *J.S. DeWeese Co. v. Hughes–Treitler Mfg.*, 881 S.W.2d 638, 644 (Mo.App. E.D.1994). With this in mind, we begin our analysis of the facts before us.

■ The July 26, 1989, Agreement executed by Messrs. Hardie and Throop contained the following provisions:

2. *Resignation of Hardie.* Simultaneously with the execution of this Agreement and effective as of the Effective Date, Hardie shall execute and deliver to Throop the Resignations and Relinquishment marked Exhibit A ... which is attached hereto and incorporated herein by reference as though fully set forth at length herein.

\* \* \* \* \* \*

4. *Representations.* From and at all times after the Effective Date, Hardie shall not (i) hold himself out to any third party or any other person or business or conduct business as ... the managing general partner of H–T Partnerships, or as having any right or authority as a general partner in the management of ... the H–T Partnerships, ...; (ii) have the authority or apparent authority to conduct any business whatsoever on behalf of ... the H–T Partnerships, ...; (iii) bind said partnerships and/or limited partnerships and their respective assets to any contract, commitment or obligation whatsoever; nor (iv) enter into any agreement, document, instrument, contract, commitment, obligation or understanding on behalf of said corpora-

tions, partnerships and/or limited partnerships with any person, business, contractor, subcontractor and/or any other person, business, contractor, subcontractor and/or any other person and/or entity whatsoever.

Provision 2 incorporates Resignations and Relinquishment marked as Exhibit A into the July 26th Agreement. However, no copy of the exhibit has been provided in the legal file before this court. Mr. Hardie has included a document entitled "Mutual Release" and labelled "Exhibit D" in the legal file. We note this is the only exhibit referred to in the July 26th Agreement which was supplied to us in the legal file. Mr. Hardie relies in part on this document as support for his claims on appeal. However, E.G. Smith suggests in its brief that at least one additional document incorporated into the Agreement supports its contentions. It is the appellant's responsibility to supply this court with a full and complete record on appeal that we may reach a conclusion on the claims before us with some degree of confidence that our decision is reasonable, fair and accurate. Rule 81.12(c); *Elbert v. Elbert*, 833 S.W.2d 884, 885 (Mo. App.E.D.1992).[1] We refuse to review the single exhibit submitted to this court in a vacuum. We also note this court is entitled to assume any portions of the record which Mr. Hardie has omitted on appeal are unfavorable to him, and that is why those portions were not included. *Daniels v. Griffin*, 769 S.W.2d 199, 201 (Mo.App.S.D.1989).

■ Hardie contends the July 26th Agreement establishes his resignation and release from the partnership. E.G. Smith argues the Agreement merely modified the partnership relationship, removing Hardie from the role of "managing" general partner and limiting his responsibilities in the partnership. Although it is generally presumed partners have equal rights in the conduct and management of the partnership business, the partners may contract to provide otherwise. RSMo § 358.180 (1986); 59A Am.Jur.2d *Partnership* § 411 (1987).

1. Additionally, the docket sheet from the circuit court indicates Mr. Hardie was deposed and the deposition was filed with the court on May 19, 1993. E.G. Smith refers to this deposition testimony and suggests Mr. Hardie admitted his be-

lief that he remained a partner in H.T. after the execution of the July 26th agreement. However, the deposition transcript has not been included for our consideration on appeal.

Partnership agreements may designate one partner as the 'managing' or 'active' partner in the conduct of the business, and may define the rights of partners in terms of votes controlling partnership activities, rendering certain partners 'nonvoting' partners without an affirmative voice in partnership decisions.

59A Am.Jur.2d *Partnership* § 41 (1987). The Uniform Partnership Act [2] provides, and the majority of jurisdictions agree, that partners may consent to relinquish exclusive control of the partnership to a managing partner. 59A Am.Jur.2d *Partnership* § 418 (1987).

Nowhere in the July 26th Agreement is it stated that Hardie is resigning as a partner from H.T. Nowhere is it stated that Hardie is being terminated as a partner in H.T. Nowhere do the documents create a limited partnership.[3] Nowhere does the Agreement state that the partnership is being dissolved. There is no evidence in the record that there was any attempt to wind up the partnership affairs subsequent to the July 26th Agreement. Consequently, we interpret the Agreement as we assume the trial court interpreted the Agreement: as a modification of the partnership rather than a dissolution of the partnership.

■ We find additional support for this determination in the record. Portions of the Partnership Returns filed for H.T. for the 1990 and 1991 tax years establish that Mr. Hardie and Mr. Throop were the only partners of H.T. during those years; they each owned fifty percent of H.T.; and they each were general partners of H.T. Although there is some authority to the contrary, it is generally accepted that tax returns showing a partnership filing status is considered prima facie evidence that the person is a partner in the business to which the returns relate. 59A Am.Jur.2d *Partnership* § 222 (1987). "[A] partnership tax return is a significant admission against interest by one subsequently attempting to deny the existence of a partnership." *Id.* Point denied.

■ For his second point, Mr. Hardie asserts he could not be held liable on the promissory note executed by Mr. Throop because Throop had no authority to bind Hardie. Because we have found that Mr. Hardie was a partner in H.T. at the time the September 5th promissory note was signed by Mr. Throop, Hardie is bound by its terms whether he authorized the execution of the note or not. *McCaskey Register Co. v. Blakeney*, 224 S.W. 62, 63 (Mo.App. Spgfld.1920). A partner signing a partnership note as an agent of the partnership is acting in his capacity as a partner. *Locatelli v. Flesher*, 276 S.W. 415, 417 (Mo.App.K.C. 1925). The rule that a partnership is liable on a contract entered by one of its members is based on the theory of agency. *Id.* "All partners are liable jointly and severally for everything chargeable to the partnership ... and for all other debts and obligations of the partnership. Any partner may enter into a separate obligation to perform a partnership contract." RSMo § 358.150 (1986). Point denied.

Based on the foregoing, summary judgment is affirmed.

REINHARD, P.J., and CRAHAN, J., concur.

---

2. *See* RSMo Chapter 358.

3. *See* RSMo § 359.020.