**In re the MARRIAGE OF Stephen W. HOLDEN and Juanita Holden.**

**Stephen W. Holden,**
**Petitioner/Appellant/Cross–Respondent,**

**v.**

**Juanita Holden,**
**Respondent/Respondent/Cross–**
**Appellant.**

**Nos. 24016, 24030.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 31, 2002.

Motion for Rehearing and Transfer
to Supreme Court Denied June 24, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Samuel P. Spain, Spain, Merrell & Miller, L.L.P., Poplar Bluff, appellant's attorney.

Gerald A. Sims, Jr., W. Morris Taylor, P.C., Clayton, respondent's attorney.

NANCY STEFFEN RAHMEYER, Judge.

Stephen W. Holden ("Husband") and Juanita Holden ("Wife") each appeal from the judgment of dissolution of marriage. Husband and Wife were married for seven years; they were married in August 1992, separated in May 1999, and were divorced on December 14, 1999.[1] No children were born of the marriage. The decree includes detailed findings of fact and conclusions of law. Husband's one point on appeal contends the overall property division is inequitable. Wife contends that there are specific errors in the classification and valuation of the property awarded to Husband, the overall division of property is inequitable, and she should have been awarded maintenance. We affirm in part, and reverse and modify in part.

■■■ In reviewing the judgment of the trial court this court must affirm unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment may be set aside as being against the weight of the evidence only with caution and a firm belief it is wrong. *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App. S.D.1991). We defer to the trial court's determination of witness credibility, as the judge is in the better position to view sincerity, character, and other intangibles not apparent in the record on appeal. *Id.* A trial court may disbelieve even uncontradicted testimony. *Id.* With this standard of review in mind, we turn to Wife's points on appeal.

## Classification of Individual Items of Property

First, Wife claims that the trial court erred in finding certain items of property were Husband's nonmarital property: Holden Investments, Inc., a State Farm Life Insurance policy, and an interest in Mt.

---

1. The proceedings were bifurcated and the judgment dividing the property was not entered until November 22, 2000.

View Properties III, L.P. Husband concedes that the State Farm Life Insurance policy, valued at $8,311, should have been classified as marital property. We will address the other two items.

### Holden Investments, Inc.

■ Prior to marriage Husband owned 50% of the outstanding shares of stock in a corporation entitled Holden Investments, Inc. ("HII"). This corporation was formed by Husband and Dennis Meeks on May 15, 1985 for the purpose of leasing and subleasing seven nursing homes. In December 1995 Husband acquired the other 50% of the shares from his partner. At the same time, Husband acquired Meeks' shares in another corporation they had formed, HML of Troy, Inc. In one transaction, Husband received the shares of stock and did the following in exchange: 1) he cancelled a debt owed by Meeks to Husband, a few thousand dollars of which was incurred by Meeks after Husband's marriage; 2) he indemnified Meeks regarding a lawsuit; and 3) he paid Meeks $100,000. Wife claims the $100,000 payment to Meeks was marital property and, thus, 50% of the stock in HII should have been classified as marital property. The trial court found HII to be nonmarital property. We note that this transaction also resulted in Husband acquiring more stock of HML of Troy, Inc., which is another asset the trial court awarded to Husband as his nonmarital property. Thus, it would seem that the same argument Wife makes concerning HII stock would logically apply to HML of Troy, Inc. stock. Nevertheless, Wife does not claim error concerning the classification and division of the HML of Troy, Inc. stock, and so we do not address that item of property in this opinion.

■ At the time of trial, the only asset of HII was a building in which Husband now practices law ("the State Farm building"), with a net value of $205,000. The trial court assigned this as the value of HII.[2] Husband testified that he acquired the State Farm building in a tax-free exchange for a building he owned prior to the marriage ("the Sonic building"). He paid $31,231 on the Sonic building after the marriage, paying off the note in 1995. In April 1999 Husband and Wife deeded the Sonic building, which had been in Husband's name alone, to HII. Husband testified that on the same date HII did a tax-free exchange of the Sonic Building for the State Farm building, with HII ending up with the State Farm building.

Pursuant to § 452.330.3,[3] "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property...." This presumption may be rebutted by a showing that the property fell into one of five categories set forth in § 452.330.2:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

2. We recognize the value of corporate stock and the net value of the assets owned by the corporation are not necessarily synonymous; however, because no further evidence was adduced concerning the value of the corporate stock at the time of the marriage or at the time of the dissolution, we accept the court's value of HII as the value of its only asset.

3. All references to statutes are to RSMo 2000, unless otherwise indicated.

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

■ Husband owned 50% of the HII stock prior to marriage and its status remained the same throughout the marriage; therefore, this 50% of the stock is nonmarital. The remaining portion is the stock Husband acquired from Meeks during the marriage. The 50% acquired during the marriage is presumed to be marital according to § 452.330.3, and Husband, as the party questioning the presumption, has the burden of proving otherwise. *In re Marriage of Pahlow*, 39 S.W.3d 87, 92 (Mo.App. S.D.2001). His only possible argument is that the stock was exchanged for nonmarital property under the exception to marital property found under § 452.330.2(2).

Wife contends that this exception does not apply because the consideration given for the stock was marital. Wife is correct in part of her argument. Husband admits that a portion of the debt cancelled for Meeks was incurred during the marriage. Thus, there was a marital interest in the debt cancellation portion of the deal. *See Bold v. Bold*, 912 S.W.2d 477, 483–84 (Mo. banc 1995). The exact amount of the marital debt cancelled is unclear, but the record reflects that a few thousand dollars of the forgiven debt was a marital asset.

■ Wife also argues that the $100,000 paid in cash was a marital asset. Even though this money was paid during the marriage, Husband offered evidence to rebut the presumption that it was marital funds. He testified that the $100,000 was "paid out of corporate monies." No evidence rebutted this testimony. Deferring to the trial court's determination of credibility, and without any evidence to rebut Husband's testimony, the standard of review requires us to find that the trial court could have believed the $100,000 paid to Meeks was non-marital funds.

■ As pointed out above, Wife is correct that some of the consideration given for the transaction was marital, meaning that the acquired stock was mixed property. The case of *Moritz v. Moritz*, 844 S.W.2d 109, 112 (Mo.App. W.D.1992) holds that in such circumstances a formula must be used to calculate the non-marital and marital portion of the value of the property based upon the source of funds paying for that property. That formula is as follows:

$$\frac{\text{marital contribution}}{\text{total contribution}} \times \text{value}$$

■ Marital contribution is the marital contribution toward the purchase of the property; total contribution is the sum of the marital and nonmarital contributions; and the value is the total value of the property at the time of its distribution. 844 S.W.2d at 112. Neither party used this formula in his or her case. The record is such that we cannot accurately calculate the marital portion flowing from the marital debt forgiven. While this may be reversible error that requires a remand for further evidence in other cases, it is not so here because the record does make it very apparent that whatever the marital portion may be, it is minimal, and the trial court's failure to find some of the HII stock marital property is harmless error. Even if the entire cancelled personal debt was marital property, the maximum amount of marital property, disregarding use of the *Moritz* formula, is several thousand dollars in a marital estate of approximately one million dollars. A less than one percent addition to Husband's property award is de minimus in our analysis of this property division. Because, as we discuss hereinaf-

ter, Wife was awarded the majority of the marital assets, we shall include in Husband's marital assets a portion of HII. Thus, even though the trial court erred in categorizing all of HII as Husband's nonmarital property, that mischaracterization did not materially affect the overall distribution of the property in that the overall division is minimally affected, and there is no reversible error. *See Gismegian v. Gismegian,* 849 S.W.2d 201, 204 (Mo.App. E.D.1993).

### *Mt. View Properties III, L.P.*

Wife next claims that the trial court misclassified Mt. View Properties III, L.P. as Husband's nonmarital property. This is an one-hundredth of one percent interest in a limited partnership given to Husband by one of his clients during the marriage. Husband receives Missouri tax credits each year as a result of this ownership and values it at $15,000. Wife contends that the asset was earned by Husband during the marriage, thus it was marital property. Husband contends it was a gift, and therefore is an exception to marital property.

With deference to the trial court's determination of credibility, the evidence supporting the nonmarital classification of this asset indicates that a client paid Husband in full for his services, but then gave Husband the interest as a gift in addition to Husband's fee. Husband testified that the asset was not given in exchange for any work done by Husband. We cannot say the trial court erred in classifying the Mt. View Properties III, L.P. property as Husband's nonmarital asset.

### Value Assigned to Certain Assets

Wife claims that the trial court undervalued the Cabo San Lucas timeshares and the parties' interest in Southeast Missouri Development Group, both of which were assets awarded to Husband. We find no error in the values assigned to these assets.

### *Cabo San Lucas Timeshares*

The parties owned two timeshares located in Cabo San Lucas, Mexico. There was conflicting testimony concerning the value of the timeshares and the trial court accepted Husband's value. Husband offered to split the timeshares equally, but Wife did not want either one. Wife contends that because Husband was incorrect on the number of years left on the timeshares, his value was not competent evidence; she claims that the value of the property should have been calculated by multiplying the cost per year by the number of years left on the timeshare. The value of the timeshare is not necessarily a mathematical calculation of cost per year multiplied by the number of years left on the timeshare. Fair market value is usually defined as the price which the property in question would bring when offered for sale by one willing, but not obliged to sell it, and it is bought by one willing to purchase it, but who is not compelled to do so. *Carter v. Matthey Laundry & Dry Cleaning Company,* 350 S.W.2d 786, 794 (Mo.1961); *Coffman v. Powell,* 929 S.W.2d 309, 312 (Mo.App. S.D.1996). As an owner, Husband was qualified to testify to the value. *Smith v. Morton,* 890 S.W.2d 403, 407 (Mo.App. E.D.1995). When confronted with his erroneous belief about the number of years left on the timeshare, Husband stood by his original value. Credibility was for the trial judge to determine and we must defer to that determination. *Lewis,* 808 S.W.2d at 922. Thus, the value was supported by evidence and no abuse of discretion occurred.

### *Southeast Missouri Development Group*

Husband owned one-sixth of the stock in Southeast Missouri Development

Group ("the Group"), which speculates on real estate and owned four pieces of property at the time of trial. The trial court found that 98% of the asset was marital, and assigned a value of $147,000 to the marital portion. Wife contends the marital portion should have been valued at $266,000, which was based on appraisals from 1996 and 1997 on two of the properties owned by the Group. Although Husband listed his equity in the corporation as $200,000 on a financial statement and Husband testified in his deposition two months prior to trial that the value was $200,000, Husband testified at trial that he valued the interest at $150,000 because a stockholder sold his interest four to six months prior to trial to other stockholders for $150,000. Husband stated that he had been offered another party's one-sixth interest for $150,000, and he would not pay any more than that.

■ The trial court apparently relied upon Husband's opinion of value. As noted above, as an owner Husband was qualified to testify to the value. *Smith,* 890 S.W.2d at 407. The court is free to disbelieve the expert testimony in the form of the appraisals. *Cohn v. Cohn,* 841 S.W.2d 782, 786 (Mo.App. E.D.1992). The trial court may have been more persuaded by the value from a recent sale of an equivalent property interest than outdated appraisals of independent pieces of property that make up the value of the asset. Given that we must defer to the trial court's assessment of credibility, there is no error in the trial court's value, and Wife's argument concerning the value of the property is rejected.

### Alleged Error in Overall Division of Property

Husband and Wife both allege that the overall division of property is inequitable, each contending the other unfairly received the majority of the marital estate. The difference in each party's contention is that Wife uses gross assets to arrive at her assertion that Husband received more assets, whereas Husband uses net assets to support his claim concerning the inequitable property division. Although there was in excess of one million dollars in marital property, the allocation of the debt greatly affects the division.

Husband, an attorney, was in the nursing home business since before the marriage; he bought or leased various nursing homes and then subleased the homes to nursing home operators. All of the nursing homes were owned through corporations formed by Husband and other investors. When he married Wife, Husband was worth between $4 million to $5 million. The nursing home industry suffered a downturn towards the end of the marriage causing Husband to sell some of his interests in the homes. Specifically, two of Husband's nursing home operators went bankrupt and Husband and his business partner borrowed $2 million to $3 million to make payroll for these nursing homes. Husband later sold much of his interest in the nursing homes in exchange for his business partner taking most of the debt. Husband was left with a personal debt of $900,000 from one business deal. Husband pays interest on the debt at a rate of $13,500 per quarter.

The primary dispute is the $900,000 debt. That debt was incurred during the pendency of the dissolution in a sale that was authorized by the trial court. Wife argues that we should not consider the debt in the division of property because Husband incurred the debt in his business transactions and Husband has the business acumen to pay the debt. Section 452.330.1 states that a trial court "shall divide the marital property and marital debts...." The debt must be considered in the overall

division of property. *See Cross v. Cross,* 30 S.W.3d 233, 236 (Mo.App. E.D.2000). The net assets are what must be considered in determining whether the division is equitable.

■■■■■ An appellate court will interfere with a trial court's division of property only if it is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *In re Marriage of Box,* 968 S.W.2d 161, 169 (Mo.App. S.D. 1998). Discretion is abused when the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* A division of property need not be equal, but it must be equitable after taking into account the factors enumerated in § 452.330.1 and any other relevant factors. *In re Marriage of Gilmore,* 943 S.W.2d 866, 876–77 (Mo.App. S.D.1997). There is no formula for assigning weight to the statutory factors. *Id.* at 877.

■■■■ After reviewing the record, it appears that the division of property is distorted greatly in favor of Wife. Such a disparate division is not supported by the evidence. The division puts Husband in the negative by over $470,000, while Wife has a positive net property division of over $500,000. No evidence supports such a one-sided division of property, and such a division shocks one's sense of justice. Bearing in mind that the division of assets does not have to be equal, we still find the property division to be inequitable.

In a similar vein, it also does not appear equitable to give virtually all of the marital assets to Husband to offset the $900,000 debt. Husband has requested the properties known as Fairway Estates, the Barker property, and the Gott farm. The Gott farm has equity of $312,000. Because the trial court could have considered the Gott Farm as income-producing property and relied upon that fact in part in its denial of maintenance to Wife, we decline to award that property to Husband. We also note that most of the farm equipment was awarded to Wife.

It is this court's judgment that the property division should be reversed and modified in that:

1) the Fairway Estates property (the net value of which is $70,000) shall be awarded to Husband rather than to Wife;

2) the Barker property (the net value of which is $50,000) shall be awarded to Husband rather than to Wife;

3) the cash award of $100,000 from Husband to Wife shall be stricken.[4]

Wife contends that awarding Husband more assets is inequitable in that Husband transferred substantial assets to family members and a similar accusation is made by Husband about Wife. The trial court specifically found that Wife's expenditures on behalf of her family were excessive, but the trial court did not find that Husband's actions with his family members were inappropriate. We must defer to the trial court's assessment of the parties' credibility and deny Wife's argument.

4. Wife requested the award of $100,000 to offset Husband's use of tax overpayment funds. Husband had a carryover tax credit of $97,000 from the 1998 tax returns that he used on his 1999 tax returns. He filed married filing separate both years. Wife contends that because she did not get to use any of the overpayment on her tax return after separation, Husband should pay her $100,000

in cash. The trial court found that Husband applied the tax credits properly, and the evidence was that there was no credit remaining. We fail to see why the use of the overpayment was unfair to Wife so as to justify an offsetting cash award in the property division. Had the tax credit not been applied to the 1999 returns, then Husband would have incurred further marital debt to pay the taxes.

Wife also contends that Husband is estopped from asking for an equal division on appeal as he did not make such a request at trial. Husband requested the same property division in the appeal as he did at trial. There is no basis for estoppel.

## Failure to Award Maintenance

Wife's final point on appeal contends that the trial court erred in failing to award her maintenance. The trial court found that Wife had sufficient marital property apportioned to her to provide for her reasonable needs, and that she is able to support herself through appropriate employment. Thus, the court found Wife did not qualify for maintenance. Wife argues this finding was erroneous. This court reverses a trial court's determination of maintenance only if it is an abuse of discretion. *Hill v. Hill,* 53 S.W.3d 114, 116 (Mo. banc 2001). We find no such abuse of discretion as the denial was supported by the weight of the evidence.

Awarding maintenance is a two-step process. First the trial court must find that the spouse seeking maintenance lacks sufficient income, either through property or employment, to provide for her reasonable needs. *See* § 452.335.1. If this threshold question is not answered in the affirmative, then the inquiry ends. *See Hosack v. Hosack,* 973 S.W.2d 863, 872 (Mo.App. W.D.1998). The evidence must be examined to see if the trial court's finding that Wife did not meet this threshold was supported by substantial evidence.

Wife started Gott Landscaping in 1994 with Husband's assistance. Husband describes Wife as "a very talented landscaper" who is "the most in demand in Dexter and Stoddard County that there is doing landscaping." Wife admits that other people have told her she is good at landscaping, and she enjoys the work. Husband testified that the business could earn $50,000 to $70,000 per year "if [Wife] will work it." There was testimony from Husband that the business had over $50,000 in account receivables at the time of trial. Although Wife testified that the business had never made a profit, Husband refused to sign a joint tax return because he believed that personal expenses were improperly deducted from the income of the business. Wife admitted filling out an apartment application in June 1999 and listing her yearly income on it at $70,000. The trial court's finding that Wife "is capable and talented in her field of landscaping and has produced significant income in the past from this endeavor" is supported by the evidence.

Not only is Wife's income from employment to be considered, but any income she might earn from property awarded to her factors in to the analysis of whether she qualifies for maintenance. *Kacich v. Kacich,* 785 S.W.2d 606, 608 (Mo.App. E.D.1990). With the modifications detailed above, Wife's net marital property award, including investment and retirement accounts, is $306,000. The trial court made no express findings as to a specific income Wife could earn, or about Wife's reasonable expenses.[5] When no ex-

---

5. The trial court noted in its Amended Judgment that Wife made a request for Findings of Fact and Conclusions of Law. That request has not been made a part of the record on appeal; thus, we are unable to review the request to determine whether the trial court complied with it. Because Wife does not raise this issue on appeal, and because we cannot review the request ourselves, we must presume that the trial court's findings were specific enough as to maintenance to comply with Wife's request. *See* Rule 81.12(c), Supreme Court Rules (2002) and *C–4 Corporation v. E.G. Smith Construction Products,* 894 S.W.2d 242, 244 (Mo.App. E.D.1995)(Appellant has the burden of supplying a complete record on appeal).

press finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result. *Mustain v. Mustain*, 842 S.W.2d 574, 575 (Mo.App. S.D.1992). Although Wife placed into evidence an Income and Expense Statement claiming $7,408 per month in expenses, the trial court was not required to accept Wife's expenses as stated *in toto*, even if the testimony was uncontradicted. *In re Marriage of Thompson*, 24 S.W.3d 751, 755 (Mo.App. S.D. 2000). The evidence indicates the trial court could have correctly determined that Wife was capable of earning approximately $72,000 per year, or $6,000 per month, and that would meet her reasonable needs. With the marital property awarded to her, we see no abuse of discretion in such a finding.

Wife further argues that the parties' standard of living far exceeded her ability to earn income. If Wife does not meet the threshold for maintenance, we do not reach the issue of reasonable needs, as this is a factor to consider in setting a maintenance amount. *See, e.g., Hosack*, 973 S.W.2d at 872. Further, reasonable needs do not automatically equal the standard of living during the marriage. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977). While there was evidence that Wife enjoyed a very high standard of living during the marriage, the evidence that Husband's business deals soured shortly before separation indicates that even if the parties stayed married, Wife's standard of living would drop. Thus, the previous standard of living is not persuasive on the issue. The trial court did not err in denying Wife maintenance. Wife's point is denied.

The decree of dissolution of marriage is affirmed except in the respects heretofore spelled out in this opinion. The decree is reversed as to those items alone, and the cause is remanded to the trial court to enter judgment consistent with this opinion.

GARRISON, P.J., and PARRISH, J., concur.