In re the Marriage of Raye Michelle
FRENCH, Petitioner/Respondent,

v.

Amos Michael FRENCH,
Respondent/Appellant.

No. SD 31447.

Missouri Court of Appeals,
Southern District,
Division Two.

April 24, 2012.

Tom K. O'Loughlin, II, Cape Girardeau, MO, for Appellant.

Shawn D. Young, Portageville, MO, for Respondent.

WILLIAM W. FRANCIS, JR.,
Presiding Judge.

Amos Michael French ("Husband") appeals the "Findings, Conclusions and Judgment of Dissolution of Marriage" ("Judgment") entered by the trial court. Husband alleges the trial court erred in failing to award him maintenance, and in failing to make a just division of marital property as required by section 452.330.[1] Finding no merit to Husband's claims, we affirm.

### Factual and Procedural History

Husband and Raye Michele Richardson ("Wife") married on February 25, 1979. In February 2006, some twenty-seven

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated, and all rule references are to Missouri Court Rules (2011).

years later, Husband and Wife separated.[2] On March 1, 2006, Wife filed a "Petition for Dissolution of Marriage." Trial occurred on February 7, 2011, and on May 27, 2011, the Judgment was entered. Husband was 59 years old and Wife was 53 years old at the time of trial. The parties stipulated that misconduct was not a factor for the trial court to consider.

Stock from three family corporations—Missouri Grain & Warehouse, Inc. ("Missouri Grain"), Richardson Gin, Inc. ("Richardson Gin"), and Grape Ridge Farms, Inc. ("Grape Ridge")—was given to Wife by her parents at a young age. Wife at no time during the marriage transferred her shares of these stocks into joint names with Husband. Husband agreed that Wife's interest in these corporations is non-marital property.[3] According to Steve Forbis, a certified public accountant, in 2006, the net book value of each share of Grape Ridge stock was $15,102.04, with Wife owning 15 shares; each share of Richardson Gin stock was $2,999.36, with Wife owning 88 shares; and each share of Missouri Grain stock was $16,672.26, with Wife owning 40 shares.[4]

In approximately 1982, Husband began employment at Missouri Grain and continued to work there until March 2006, leaving shortly after the parties separated. Husband acknowledged that he was paid for all hours worked while employed at Missouri Grain, but alleged that between 1981 and 2000, when he worked overtime, he was paid "straight time" and not "time and a half." Husband was hired at $12.50 per hour and when he left Missouri Grain, twenty-five years later, he was earning $17.25 per hour. Missouri Grain additionally paid for premiums for Husband's medical and hospitalization insurance, and matched Husband's contributions to his 401(k) plan. Missouri Grain reimbursed Husband his yearly truck payments, between $4,800 and $5,200, annually or sometimes quarterly. Missouri Grain also provided fuel to Husband for his personal vehicle. Husband also hauled cotton seed for Missouri Grain. In addition to his wages as foreman, Husband was paid similar to other Missouri Grain haulers for hauling cotton seed. However, unlike other haulers, Husband was not required to pay his own drivers out of the money paid to him, and Missouri Grain did not charge Husband for fuel costs for three years— $10,000, $17,000, and $22,000 respectively.

Husband has no knowledge of what "others in the cotton or grain industry or grain business" were paid while he worked at Missouri Grain, but Husband believes he was shorted between $375,000 and $500,000 during his twenty-five years with the corporation. Husband never complained to Barry Richardson, Sr. ("Mr. Richardson")—Wife's father who ran the three family corporations—that he was underpaid for his work at Missouri Grain.

Prior to the parties' separation, Wife received from Missouri Grain an annual distribution in an amount determined by

2. Husband and Wife had one child born July 28, 1983, who is emancipated.

3. While extensive trial testimony was devoted to evidence regarding a possible transfer by Wife of her stock to the corporations on July 11, 1995, the trial court found that Wife's stock in each of the corporation was her separate property because the claimed transfers in 1995 were "not completed."

4. Multiple exhibits referenced in the Judgment and by the parties were not deposited with this Court. When an exhibit is not deposited with this Court, "the intendment and content of the exhibits [will be] taken as favorable to the trial court's ruling and [as] unfavorable to the appellant." *Brown v. Brown*, 14 S.W.3d 704, 708 n. 5 (Mo.App. S.D.2000). We proceed accordingly in our recitation of the facts.

Mr. Richardson. This distribution could on occasion be as much as $75,000 to $130,000. Wife continued to receive an annual distribution until 2010 when Mr. Richardson determined no distribution would be made.

Wife's tax returns reported income after the separation, even though she admitted to doing nothing to earn the reported income since at least 1995. Wife, however, testified she occasionally worked in one of the family corporations weighing agricultural commodities when regular employees were unavailable. Wife's tax returns, beginning in 2006, indicated she had begun a "cotton ginning" business. In 2010, the only income Wife had was from a $700 per month salary for which she performed no services. Mr. Richardson testified the salary was paid because after Husband left, Wife "had no way to make a living."

When Husband and Wife separated, Husband started Mike French Trucking, LLC. At the time of the separation, Husband "had a couple of day cab Freightliner trucks, two end-dump trailers, and one level-floor Wilson cottonseed trailer." Thereafter, Husband acquired additional equipment. At the date of the evidentiary hearing, Husband had four tractors and ten trailers. According to a "public fee appraiser" retained by Wife,[5] this equipment had a fair market value of $254,000. According to Husband's appraisal, the approximate value of the equipment was $227,500.[6] The Judgment refers to these assets as the "rolling stock" of Mike French Trucking. Husband owes $245,963 in principal for a loan on the equipment.

Husband's federal income tax returns showed Husband's net profits were as follows:

| Year | Gross Receipts | - | Expenditures (excluding depreciation) | = | NET PROFIT |
|------|----------------|---|----------------------------------------|---|------------|
| 2006 | $273,242 | - | $230,698 | = | $ 42,544 |
| 2007 | $199,903 | - | $164,163 | = | $ 35,470 |
| 2008 | $380,278 | - | $303,128 | = | $ 77,150 |
| 2009 | $447,263 | - | $327,741 | = | $119,522 |

In 2010, according to Husband's "estimated" income tax return, he had gross receipts of $473,780, and he had expenses, which were not labeled but excluded depreciation, of $387,049, giving him a net profit of $86,731.

Husband stated his monthly expenses were $4,780.81, which included his mortgage payment on his residence, utilities, personal vehicle payment, medical insurance premiums, and other living expenses such as food, clothing, and recreation.

Husband testified at trial that since he separated from Wife, he had been able to pay his bills, buy food and clothes, and purchase a house with a swimming pool, a Harley Davidson motorcycle, and a 2011 pickup truck. Husband agreed that he could in fact meet his reasonable needs for living.

The trial court found both Husband and Wife had sufficient property, including apportioned marital property, to provide for

---

5. This appraisal also valued Husband's 2009 GMC truck at $26,000 and his 2006 Harley Davidson at $11,000.

6. Husband admitted that he whited out the word "wholesale" that the appraiser had included in the copy he provided.

their reasonable needs, and both earned or were capable of earning a sufficient income. Thus, the trial court did not award maintenance to Husband or Wife. Additionally, the trial court found each party had sufficient funds to pay his or her own attorney fees, and did not award attorney's fees.

The trial court divided the marital property, and awarded Husband the following: (1) the real estate and residence where Husband was residing, with a fair market value of $63,000, and Husband to pay the outstanding balance of $57,264.98; (2) the 2009 GMC Sierra motor vehicle,[7] with a fair market value of $26,000; (3) the 2006 Harley Davidson motorcycle, with a fair market value of $11,000; (4) all funds held in any account in Husband's name in any bank, credit union or similar depository; (5) all furniture, furnishings, and miscellaneous personal property in Husband's possession; (6) any life insurance policy for Husband issued by American National Life Insurance Company and State Farm Life Insurance Company; (7) all assets including cash, accounts receivable, "rolling stock," equipment, furniture, fixtures, work in progress and goodwill of the business known as "Mike French Trucking." Husband was to satisfy any indebtedness secured by the "rolling stock" equipment or other assets of the business. In addition to the marital property awarded to Husband, the trial court awarded him $75,000 to be paid to him by Wife. Husband had no identifiable separate property.

Wife was awarded the following property: (1) the marital home where Wife resided, with a fair market value of $225,000; (2) a life estate in an undivided one-half interest in 283.3 acres in New Madrid County, Missouri; (3) the 2002 Cadillac automobile; (4) all funds held in any account in her individual name in any bank, credit union or similar depository; (5) all furniture, furnishings and miscellaneous personal property in her possession; and (6) any policy of insurance on her life. Wife was also awarded as separate property all shares of the common stock in Missouri Grain, Richardson Gin, and Grape Ridge.

The trial court generally held each party would be responsible for any indebtedness in Husband or Wife's own names and on any asset apportioned to him or her under the Judgment.

This appeal followed. Husband claims the trial court erred in failing to: (1) award maintenance to Husband in accordance with section 452.335; and (2) make a just division of marital property as required by section 452.330. The primary issues necessary for our resolution of the case are:

1. Did the trial court abuse its discretion in finding Husband was able to meet his reasonable needs through property, including that awarded in the dissolution, and through his employment?

2. Did the trial court abuse its discretion in making its division of marital property?

### Standard of Review

██ In a dissolution case, this Court will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Jennings v. Jennings*, 327 S.W.3d 21, 23 (Mo.App. E.D.2010). "We do not retry the case, rather we accept as true the

---

**7.** The trial court noted that Husband traded in his 2009 GMC truck for a 2011 GMC truck for $41,700.

evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo.App. E.D.2003). "We defer to the trial court's determinations of credibility in making our review." *Souci v. Souci*, 284 S.W.3d 749, 753 (Mo. App. S.D.2009).

### Point I: No Maintenance Award

First, Husband claims the trial court erred in failing to award maintenance to Husband in that the court: (1) incorrectly calculated disposable income of the parties; (2) failed to consider the value of disguised dividends from Wife's undervalued separate property; (3) failed to comprehend severed loss of income and benefits to Husband upon loss of Wife's family employment; and (4) wholly failed to apply commonsense and logical principles to the concept of depreciation of Husband's rolling stock.

■ "A trial court has broad discretion in deciding whether or not to award maintenance." *Maxwell v. Maxwell*, 235 S.W.3d 81, 83 (Mo.App. S.D.2007). As such, Husband must show the award "is so arbitrary, unreasonable, and clearly against the logic of the circumstances that it shocks the sense of justice and shows a lack of careful consideration." *Id.* "If reasonable minds can differ about the propriety of the court's action, the court did not abuse its discretion." *Id.*

■ Awarding maintenance is a two-step process. Initially, the trial court must find that the spouse seeking maintenance lacks sufficient income, either through property or employment, to provide for his or her reasonable needs. § 452.335.1. If this threshold test for eligibility under section 452.335.1 is not met, as in this case, then the inquiry ends. *In re Marriage of Holden*, 81 S.W.3d 217, 226

(Mo.App. S.D.2002). "The spouse seeking maintenance has the burden of establishing the statutory threshold requirements." *Barton v. Barton*, 157 S.W.3d 762, 766 (Mo.App. E.D.2005).

■ Here, the trial court found Husband "has sufficient property, including marital property apportioned to him, to provide for his reasonable needs and earns an income sufficient to support himself," and thus, did not award Husband maintenance. Husband argues he does not have sufficient property to meet his needs, basing this primarily on the trial court's alleged failure to consider how Husband will pay the $245,993 Husband owes on his company's trucking equipment and its depreciation. We, however, do not find Husband met his burden of proving he lacks sufficient income to meet his reasonable needs.

First, Husband testified at trial that since he separated from Wife, he had been able to pay his bills, buy food and clothes, purchase a house with a swimming pool, a Harley Davidson motorcycle, and a 2011 pickup truck. Husband agreed that he could in fact meet his reasonable needs for living.

Additionally, the trial court's calculations of Husband's yearly net profits support a finding of Husband's ability to provide for his reasonable needs. Husband's stated expenses were $4,780.81 per month. According to Husband's income tax returns for the past few years, his net profits—excluding depreciation—were significantly above this amount. The trial court calculated Husband's net profits for each year by subtracting Husband's business expenses—excluding depreciation—from his gross receipts shown in his federal income tax returns. Using this calculation, the trial court found Husband's net profits to be substantially increasing over

the last five years: 2010–$86,731 ($7,227.58 per month);[8] 2009–$119,522 ($9,960.16 per month); 2008–$77,150 ($6,429.16 per month); 2007–$35,470 ($2,978.33 per month); and 2006–$42,544 ($3,545.33 per month).

Husband fails to recognize the purpose of a maintenance award is not to provide for the building of an estate or accumulation of capital. *Sharrai v. Sharrai,* 322 S.W.3d 641, 646 (Mo.App. W.D. 2010). Rather, the trial court's analysis under section 452.335 requires the trial court to consider whether the party seeking maintenance can meet his *reasonable needs* through the "marital property apportioned to him" and appropriate employment. *Angel v. Angel,* 356 S.W.3d 357, 363 (Mo.App. W.D.2011); § 452.335.1. We recognize that a spouse receiving maintenance " 'is not required to deplete his or her share of the marital property awarded in the dissolution proceedings before being entitled to maintenance.' " *Sharrai,* 322 S.W.3d at 645 (quoting *Jung v. Jung,* 886 S.W.2d 737, 740 (Mo.App. E.D.1994)). However, any income that will be earned from the marital property must also be considered by the trial court in determining the necessity for maintenance. *Sharrai,* 322 S.W.3d at 646. In addition to the two semi-tractor units and two trailers Husband took with him when the parties separated (that were marital assets), Husband also received $75,000 cash from Wife as equalization of the marital assets; this must also be considered as having potential to produce additional income from its investment. Again, "[m]aintenance must be limited to the demonstrable needs of the recipient spouse and not provide an accumulation of capital." *In re Marriage of Clarke,* 950 S.W.2d 11, 13 (Mo.App. E.D.1997).

On the date of trial, Husband had four semi-tractor units and ten trailers, but owed $245,963 in principal on the loan for the equipment. Husband contends he cannot meet his reasonable needs because this principal owed has to "come[ ] from what the trial court refers to as 'net profits' according to the misguided judgment." Husband's reasoning regarding this claim is illogical in that the trial court was clear that in its calculation of net profits, it was deducting "business expenses" from his gross receipts. The trucking equipment is clearly a business expense and according to Husband's "Loan Inquiry" records, Husband has been making significant payments since 2007 on some of these loans. Thus, Husband's principal payments for the loans on his equipment would have been deducted in figuring Husband's net profits according to the trial court's calculations.[9] Husband's conclusory assertion that there is an additional $61,484 per year that must be deducted does not take into account the fact that Husband has been making payments on these loans as part of his calculated business expenses.[10] Hus-

---

8. The trial court also noted that on December 31, 2010, Husband's business account had a balance of $74,095.47.

9. Husband's exhibit listing his business expenses was not deposited with this Court. Because the exhibits were omitted, we will presume the income and expense statement support the trial court's decision. *See Thomas v. Dir. of Revenue,* 874 S.W.2d 427, 429 (Mo.App. W.D.1994).

10. It only appears that there would be an additional increase of Husband's payments on the four loans he took out in 2010, as Husband's Loan Inquiry shows Husband made payments on the other loans in 2010, and these expenses would have been deducted as business expenses. A review of the record shows these four additional loans only require an estimated $22,515.71 per year in payment—not an additional $61,484 as alleged by Husband. Even assuming that these new investments in equipment would not increase

band fails to direct us to any evidence supporting his contention that the trial court used a "misguided formula" to determine Husband's net profits.

■ Husband also argues the trial court failed to "apply common sense [sic], logic and principles to the concept of depreciation of the Husband's Rolling Stock." However, "[w]hether a trial court adds a claimed depreciation deduction to a spouse's gross income is within the court's discretion."[11] *Meier v. Meier*, 306 S.W.3d 692, 700 (Mo.App. E.D.2010). Further, the trial court did consider the fair market value of the equipment.

Accordingly, we do not find the trial court abused its discretion in determining Husband was able to meet his reasonable needs through property, including that awarded to him in the dissolution, and through his employment. Husband has failed to meet the threshold test for eligibility of maintenance and thus, we need not consider Husband's remaining argument regarding relevant factors for determining the amount of a maintenance award. Point I is denied.

### Point II: Distribution of Marital Property

■ Next, Husband contends the trial court erred in failing to make a just division of marital property as required by section 452.330, for six different reasons.

■ "A trial court is given broad discretion in dividing property in a dissolution action, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion." *Souci*, 284 S.W.3d at 754. We presume the division of property is correct and the challenging party bears the burden of overcoming this presumption. *Id.* at 755. " 'The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case.' " *Id.* (quoting *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App. W.D.2000)).

■ In a dissolution proceeding, the trial court is required to first set apart each spouse's non-marital property and then divide the marital property and debts in such proportions as the court deems just after considering all relevant factors. § 452.330.1. When dividing the marital property, per section 452.330.1, the trial court must consider all relevant factors including: (1) "the economic circumstances of each spouse at the time the division of property is to become effective . . . [ ]"; (2) how each spouse contributed "to the acquisition of the marital property, including the contribution of a spouse as homemaker"; (3) "[t]he value of the nonmarital property set apart to each spouse"; and (4) the conduct of each spouse during the marriage. § 452.330.1(1)–(4). "Those factors listed in section 452.330.1 are not exhaustive, and the trial court has 'great flexibility and far-reaching power in dividing the marital property.' " *Long v. Long*, 135 S.W.3d 538, 542 (Mo.App. S.D.2004) (quoting *Farley v. Farley*, 51 S.W.3d 159, 165 (Mo.App. S.D.2001)).

There is no formula respecting the weight to be given by the trial court to the relevant factors set out in section 452.330.1, and while the statute requires

---

Husband's gross receipts as one might reasonably expect, he still would have sufficient means to make the payments and meet his reasonable needs based on his past net profits.

**11.** "Depreciation, however, may be excluded from such ordinary and necessary expenses because depreciation is a non-cash deduction and, therefore, may artificially reduce a spouse's reported gross income." *Meier*, 306 S.W.3d at 700.

a fair and equitable division of marital property given the individual circumstances of the case, it does not require an equal division of marital property. *Kester v. Kester*, 108 S.W.3d 213, 224 (Mo. App. S.D.2003).

First, Husband argues the trial court failed to properly value the marital and separate property based upon the fact that Husband's trucking "account less the detailed obligations should be at least zero even though a negative number is more accurate." Husband argues that to ignore the updated balance, and the payables and accrued taxes, prevents this Court from conducting a meaningful appellate review. According to Husband's brief, Wife's "Amended Statement of Marital and Non–Marital Assets and Debts" and her schedule of marital property [12] report Husband's trucking account had a balance of $58,688.01, and Husband's "Amended Statement of Marital and Non–Marital Assets and Debts" show an account balance of $64,390.65 as of January 27, 2011, five business days before trial. Nevertheless, Husband focuses on the fact that his Amended Statement notes there are $71,838 in trucking payables, outstanding checks, income taxes, attorney's fees and litigation costs that should offset any amount in the account. Husband described $35,837.67 of the "payables" to include estimates for "Health insurance, Life and Hospital insurance, Worker's compensation, Simmons Service (tires), Griffin Oil (diesel), Porageville Parts, Shop rent, House note, Credit card, Payroll (1 week), Utilities and phone, and Duckett Truck repairs and parts"; $25,000 in estimated attorney fees; and $11,000 in taxes. In our review of these expenses, we do not find any logical reason these expenses should have been specifically deducted to offset any value of this account, and Husband identifies no legal reasoning or authority in support.

The trial court found each party had sufficient funds to pay for his or her own attorney fees and did not award attorney fees to either party; this negates $25,000 of this claimed miscalculation by the trial court. Additionally, the $35,837.67 in "payables" are re-occurring business expenses or re-occurring personal expenses. Again, Husband cites to no authority by which these expenses would also need to be subtracted from the value of this business account, and we find no logical reason they should be. In fact, many of these payables were considered elsewhere by the trial court. For example, in figuring Husband's net profits, the trial court subtracted "business expenses" which would presumably include most of the expenses Husband lists as "payables," e.g., diesel, workers' compensation insurance, shop rent, and payroll. Similarly, Husband provides no explanation why the trial court should have subtracted another $11,000 for "taxes" from the trucking account total.

While Husband also takes issue with the trial court referencing the balance of this account on December 31, 2010, a date more than a month before the hearing, a more logical reading of this reference appears to be that the trial court was merely showing the assets of Husband's trucking company from 2010 to provide a more accurate picture of Husband's business profits in 2010. The trial court included this amount in a footnote on the paragraph discussing the calculation of Husband's 2010 net profits stating: "On December 31, 2010, the account of husband, doing business as Mike French Trucking, at First State Bank & Trust

12. These exhibits were also not deposited with this Court and thus, are taken as favorable to the trial court's ruling. *See Brown,* 14 S.W.3d at 708 n. 5.

Company, Inc. had a balance of $74,095.47." Nowhere does it say this was the value used when dividing the marital property. "When no express finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result." *Holden*, 81 S.W.3d at 226–27.

 Husband also argues that the trial court failed to determine the fair market value of Wife's separate property because by using the book value of Wife's stock it "dwarfs the whole marital estate." It is important to remember that while the trial court can consider the value of separate property, the trial court cannot allow consideration of the separate property that each party receives to have a substantial material impact on the overall division of marital property. *Selby v. Selby*, 149 S.W.3d 472, 491 (Mo.App. W.D.2004). Additionally, Husband has failed to direct this Court to any evidence in the record showing an alternate value to the book value for Wife's stock. The only reference Husband makes is sheer conjecture:

> On the fair market side, *if* the companies' land value is increased from $2,500.00 an acre (used by CPA Forbis in his FMV Statement) to $4,000.00 an acre (which [Mr. Richardson] agreed *might* well be the value) on the more than 3,000 acres owned by the corporations, the value of the corporations would increase by $4,500.000.00 [sic] and the marital estate is a pittance by comparison.

(Emphasis added). Again, there is no reference to the record in support of this allegedly more appropriate fair market value.[13]

 Next, Husband claims as part of his point relied on that the trial court ignored the parties' stipulation that misconduct was not a factor in the case. However, Husband fails to elaborate on this in his argument. "'Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review.'" *State v. Edwards*, 280 S.W.3d 184, 190 (Mo.App. E.D.2009) (quoting *Blakey v. AAA Professional Pest Control, Inc.*, 219 S.W.3d 792, 794 (Mo.App. E.D.2007)).

Husband also includes in his point relied on an accusation that the trial court "misstated evidence," but again, Husband fails to make a single reference in his argument as to what evidence was misstated; this argument is deemed abandoned. *See Edwards*, 280 S.W.3d at 190.

 Finally, Husband claims the trial court failed to note and consider "illegal tax schemes" entered into by Wife, her father, and the family corporations. Again, Husband fails to develop this claim and explain how this adversely affected the trial court's division of the marital property. *See id.* It seems that any alleged illegal tax scheme would result in additional money being owed to the government, and would not cause Husband to be entitled to additional money or assets.

13. Numerous facts in Husband's brief are asserted without any indication of where reviewing authority may look to ascertain their accuracy. Rule 84.04(i) requires: "All statements of fact and argument shall have specific page references to the legal file or the transcript." Compliance with the portion of the appellate briefing rule governing references to the record "is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record. Reviewing authority may not become an advocate for the non-complying party on appeal." *State v. Hardin*, 229 S.W.3d 211, 215 (Mo.App. W.D. 2007) (internal quotation and citation omitted).

Husband has failed to direct us to any evidence indicating the division of the property is so unduly weighted in favor of Wife that it amounts to an abuse of discretion and thus, failed to overcome the presumption that the trial court's division of property is correct. The trial court did not abuse its discretion in making its division of marital property. Point II is denied.

Accordingly, the judgment of the trial court is affirmed.

BARNEY and BATES, JJ., CONCUR.